IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America | ) | Cr. No.: 4:23-cr-00304-JD |
| | ) | |
| vs. | ) | |
| | ) | **ORDER** |
| | ) | |
| Kenneth Earl Jackson, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on Defendant Kenneth Earl Jackson's ("Defendant" or "Jackson") Motion to Suppress (DE 42). This Court held an evidentiary hearing on February 8, 2024, to consider Jackson's motion. For the reasons stated below, Defendant's motion is denied.

**FACTUAL FINDINGS[1]**

After midnight on February 20, 2023, the Horry County Police Department ("HCPD") dispatched officers to a call for gunshots fired in the parking lot of Klocker's Tavern. HCPD Officer Tanner Dudley ("Officer Dudley" or "Dudley") received a radio dispatch to respond to this call for service. As he reached the area of the Circle K on Socastee Boulevard, about two miles from Klocker's Tavern, Officer Dudley noticed the approaching headlights of Jackson's vehicle. Officer Dudley stated in a report that he observed the car traveling towards him at a "high rate of speed," estimating Jackson's vehicle was traveling in excess of 60 mph in a 40 mph speed limit zone. Officer Dudley testified that he observed Jackson abruptly hit his vehicle's brakes, causing the front end of the car to compress aggressively downward on its front suspension. This brief moment was captured on Officer Dudley's dashcam.

---

[1] "In the course of deciding a motion to suppress, the district court may make findings of fact, as well as rulings of law . . . ." United States v. Stevenson, 396 F.3d 538, 541 (4th Cir. 2005).

Officer Dudley initiated a traffic stop and informed Jackson that he stopped him for excessive speed and asked for Jackson's driver's license. Jackson told Officer Dudley he did not have his license in his possession. Officer Dudley then asked additional routine questions incident to a traffic stop. Jackson, the sole occupant of the Jeep, was asked to exit the vehicle and did so without incident. Officer Dudley then asked Jackson for consent to search the vehicle, and Jackson gave consent. Upon searching the vehicle, Officer Dudley found a firearm lying in plain view on the front passenger seat. The handgun was later linked to the gunshots fired at Klocker's Tavern. Jackson seeks to suppress the firearm, as evidence supporting the charges pending against him.

## **LEGAL STANDARD**

The Fourth Amendment protects citizens against unreasonable searches and seizures. See U.S. Const. Amend. IV. "The essential purpose of the proscriptions in the Fourth Amendment is to impose a standard 'reasonableness' upon the exercise of discretion by government officials, including law enforcement agents, in order 'to safeguard the privacy and security of individuals against arbitrary invasions . . . .'" Delaware v. Prouse, 440 U.S. 648, 653–54 (1979) (quoting Marshall v. Barlow's, Inc., 436 U.S. 307, 312 (1978)). "[S]earches and seizures 'conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions.'" Minnesota v. Dickerson, 508 U.S. 366, 372 (1993) (citations omitted).[2]

"The exclusionary rule 'generally prohibits the introduction at criminal trial of evidence obtained in violation of a defendant's Fourth Amendment rights . . . .'" United States v. Stephens,

---

[2] Examples of such well-established exceptions include, but are not limited to, the exigent circumstances exception, Mincey v. Arizona, 437 U.S. 385, 394, (1978), the search incident to arrest exception, United States v. Robinson, 414 U.S. 218, 224 (1973), the automobile exception, Maryland v. Dyson, 527 U.S. 465, 466, (1999), the stop and frisk exception, Terry v. Ohio, 392 U.S. 1 (1968), the consent exception, Fla. v. Jimeno, 500 U.S. 248, 250–51 (1991), and the "plain-view" doctrine, United States v. Legg, 18 F.3d 240, 242 (4th Cir. 1994).

764 F.3d 327, 335 (4th Cir. 2014) (quoting Pennsylvania Bd. of Prob. & Parole v. Scott, 524 U.S. 357, 359 (1998)).  "[T[he exclusionary rule is not a 'strict liability regime,' and exclusion of evidence has 'always been [the] last resort, not [the] first impulse.'" Id. (internal citations omitted).  At a suppression hearing, the Government bears the burden of proving a search or seizure did not violate the Fourth Amendment.  See United States v. Matlock, 415 U.S. 164, 177 n.14 (1974).  "[T]he controlling burden of proof at suppression hearings should impose no greater burden than proof by a preponderance of the evidence." Id.

## DISCUSSION

Jackson contends "[t]he vehicle stop in this case was unconstitutional because it was neither supported by probable cause that a traffic offense had been committed; nor did the officer have reasonable suspicion that criminal activity was afoot." (DE 42, p. 4.)  This Court disagrees and finds the vehicle stop was constitutional based on reasonable suspicion that a traffic offense occurred.[3]  "It is well established that the '[t]emporary detention of individuals during the stop of

---

[3]     The government also contends Officer Dudley had reasonable suspicion that criminal activity was afoot because Jackson was traveling on a direct route from Klocker's Tavern, he was pulled over in a short time frame from when the call about gunshots at Klocker's was received, the lateness of the hour, the limited number of other vehicles on the road, the high rate of speed going away from the scene, and evasive actions such as hard braking in reaction to the presence of police. (DE 45, p. 7.) But "[the Fourth Circuit] emphasize[s] that the Constitution requires 'a *particularized* and objective basis for suspecting *the particular person stopped* of criminal activity.'" United States v. Massenburg, 654 F.3d 480, 486 (4th Cir. 2011) (citation omitted). "[T]his demand for specificity in the information upon which police action is predicated is *the central teaching of this Court's Fourth Amendment jurisprudence.*" Id. (quoting Cortez, 449 U.S. at 418) (emphasis in the original).

Here, an anonymous, uncorroborated tip that gunshots were fired two miles away from where Jackson was stopped did not constitute a *particularized* objective basis that Jackson was involved. The gunshot report included no details or description of the person who fired the gunshots, if that person got into a vehicle, or a description of *any* vehicles at the scene.  Thus, based on these facts, Officer Dudley did not have reasonable suspicion that criminal activity was afoot that *alone* would justify the stop. See United Massenburg, 654 F.3d at 486–87 (Court found no reasonable suspicion to stop and frisk Defendant who was four blocks from reported gunfire. Officers were responding to an anonymous tip that shots were fired in a high-crime neighborhood. The court found "'[r]eliance on an anonymous tip may be reasonable where, 'suitably corroborated, [it] exhibits sufficient indicia of reliability.' [T]he tip here 'provided no predictive information and therefore left the police without means to test the informant's knowledge or credibility.'")

an automobile by the police ... constitutes a 'seizure,'' no matter how brief the detention or how limited its purpose." United States v. Branch, 537 F.3d 328, 335 (4th Cir. 2008) (citations omitted). But "[b]ecause an ordinary traffic stop is more analogous to an investigative detention than a custodial arrest, we analyze the propriety of a traffic stop using the dual inquiry announced in the Supreme Court's holding in Terry v. Ohio, 392 U.S. 1, 19–20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)." United States v. Green, 740 F.3d 275, 279 (4th Cir. 2014). That inquiry asks, "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 20.

Jackson only contests whether the traffic stop was justified at its inception. But "if an officer has probable cause or a reasonable suspicion to stop a vehicle, there is no intrusion upon the Fourth Amendment." United States v. Kellam, 568 F.3d 125, 136 (4th Cir. 2009). "Observing a traffic violation provides sufficient justification to detain the offending vehicle for as long as it takes to perform the traditional incidents of a routine traffic stop." Branch, 537 F.3d at 335. Here, Officer Dudley observed Jackson's vehicle traveling at a "high rate of speed," testifying that based on a visual estimate, Defendant was traveling in excess of 60 mph in a 40 mph zone.

> However, the Fourth Amendment does not allow, and the case law does not support, blanket approval for the proposition that an officer's visual speed estimate, in and of itself, will always suffice as a basis for probable cause to initiate a traffic stop. Instead, for the purposes of the Fourth Amendment, the question remains one of reasonableness. Critically . . . the reasonableness of an officer's visual speed estimate depends, in the first instance, on whether a vehicle's speed is estimated to be in significant excess or slight excess of the legal speed limit. If slight, then additional indicia of reliability are necessary to support the reasonableness of the officer's visual estimate.

United States v. Sowards, 690 F.3d 583, 591 (4th Cir. 2012). But "where an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential—i.e., the percentage difference between the estimated speed and the legal speed limit—may itself provide

4

sufficient 'indicia of reliability' to support an officer's probable cause determination." Id. Thus, the speed differential of Jackson's estimated speed (60 mph in a 40 mph zone), provided sufficient indicia of reliability to support the reasonableness of Dudley's estimate.

That said, Jackson relies on the holding in Sowards in which the Fourth Circuit found an officer's "visual speed estimate was[,] in fact[,] a guess that was merely conclusory, without an appropriate factual foundation, and simply lacking in the necessary indicia of reliability to be an objectively reasonable basis for probable cause to initiate a traffic stop." 690 F.3d at 594. But Sowards is distinguishable from this case in two ways. First, in Sowards, the officer visually estimated the vehicle going 75 mph, only in slight excess of the 70 mph zone, which required additional indicia of reliability. See id. at 593. Here, the speed differential is similar to the cases the Fourth Circuit used to illustrate a "significant excess of legal speed limit." See id. at 591.[4] Second, in Sowards, evidence was put forth that cast doubt on the officer's ability to estimate speed and the accuracy of his visual estimate. See id. at 594–95. In this case, although the dash cam footage is inconclusive of Officer Dudley's visual estimate of speed, no evidence was put forth that cast doubt on Officer Dudley's ability to estimate speed. Further, additional indicia of reliability are unnecessary, considering the significant speed differential between Officer Dudley's estimate and the legal speed limit. Thus, the Court finds the stop was justified at inception, so the evidence cannot be suppressed.

---

[4] Citing United States v. Banks, 2008 WL 4194847, at *1, *4 (M.D.Fla. Sep. 11, 2008) (finding probable cause where officer observed vehicle "traveling at a high rate of speed," estimated to be 50–60 mph in a 30–mph zone, making it "extremely obvious to [the officer] that the vehicle was speeding"); State v. Butts, 46 Kan.App.2d 1074, 269 P.3d 862, 873 (2012) (finding reasonable suspicion where officer "estimated vehicle speed [was 45 mph in a 30–mph zone, which was] significantly higher than the posted speed limit and, as a result, a difference that would be discernable to an observant and trained law enforcement officer"); People v. Olsen, 22 N.Y.2d 230, 292 N.Y.S.2d 420, 239 N.E.2d 354, 355 (1968) (holding officer's visual speed estimate of vehicle traveling 50–55 mph in a 30–mph zone sufficient to support speeding conviction)).

## CONCLUSION

For these reasons, Jackson's Motion to Suppress (DE 42) the firearm, as evidence supporting the charges pending against him, is **DENIED**.

**IT IS SO ORDERED.**

February 23, 2024
Florence, South Carolina

Joseph Dawson, III
United States District Judge